*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DBK & DEK LIMITED PARTNERSHIP, LP,

        Plaintiff-Appellee,

v

ALAN KATKIN,

        Defendant-Appellant.

UNPUBLISHED
November 14, 2025
2:52 PM

No. 369872
Oakland Circuit Court
LC No. 2018-167269-CZ

Before: RIORDAN, P.J., and WALLACE and TREBILCOCK, JJ.

PER CURIAM.

This case revolves around the question of whether defendant slandered the title of real property owned by plaintiff (the subject real property). Defendant filed a claim with the register of deeds, asserting an interest in the subject real property, in November 2017. In response, plaintiff filed an action in the circuit court for slander of title and declaratory relief. The parties subsequently filed cross-motions for summary disposition. The trial court denied defendant's motion. It granted plaintiff's motion in part, by holding that defendant did not have legal cause to file the claim of interest, which the court held must be withdrawn. The court also held that, in order to prevail on the slander of title claim, plaintiff must prove that the false statement by defendant, i.e., that he had a legal interest in the real property, was made with malice, and that plaintiff would also have to prove special damages, relying upon *B&B Investment Group v Gitler*, 229 Mich App 1, 8; 581 NW2d 522 (1998).[1] The court then held a bifurcated bench trial, after which it issued an opinion and order finding that defendant acted with malice when he recorded the claim of interest, that plaintiff suffered special damages as a result, and awarding $298,689 in damages to plaintiff as compensation for defendant's slander of title.

We affirm in part, vacate in part, and remand to the trial court for the recalculation of damages and entry of judgment, consistent with this opinion.

---

[1] The trial court denied defendant's motion for summary disposition because there were genuine issues of material fact on the issues of malice and special damages.

## I. FACTUAL AND PROCEDURAL HISTORY

In 1992, the subject real property, located in Rochester, Michigan, was transferred via quit claim deed by defendant's grandmother, Doris Katkin, to the Doris Katkin Revocable Trust (the trust) for the full consideration of one dollar. Twenty years later, on March 12, 2002, a quit claim deed was signed by David Katkin, transferring ownership of the property from the trust to plaintiff, a limited partnership. At that time, David Katkin was the successor trustee of the trust. The text of the deed referred to him as "Agent under Durable Power of Attorney dated 1/3/2000 for DORIS KATKIN, an unremarried widow of SAM KATKIN." Eight months after that transfer, David Katkin, who was still serving as the successor trustee of the trust, entered into a purchase agreement to sell the trust's interest in plaintiff, which was 71.4% of the limited partnership, to another trust, the Katkin Family Irrevocable Trust Agreement No. 1, for $300,000 under a security agreement and promissory note.[2]

On November 1, 2017, defendant recorded a "Claim of Interest in Real Estate" with the register of deeds, alleging that he had a legal interest in the subject property.

Plaintiff responded by filing a complaint in circuit court in July 2018, alleging that defendant slandered the title of the subject property, requesting declaratory relief consisting of an order compelling defendant to execute and deliver to plaintiff a release of the claim of interest filed, requesting money damages arising out of the slander of title, and requesting the award of attorney fees and costs.

### A. CROSS-MOTIONS FOR SUMMARY DISPOSITION

Both parties subsequently moved for summary disposition. Relevant to this appeal, plaintiff sought entry of judgment in its favor under MCR 2.116(C)(10), arguing that the proper legal remedy for the relief defendant requested was a quiet title action; however, according to plaintiff, due to the expiration of the applicable limitations period, defendant instead recorded the claim of interest in an attempt to evade application of the statute of limitations.[3] More specifically, plaintiff argued that the subject real property was transferred out of the trust in March 2002 by the trustee, that defendant had notice of the transfer at that time, and that the 15-year statute of limitations provided in MCL 600.5801 expired in March 2017, at which time defendant had not filed a quiet title action. Instead, after the limitations period passed, defendant recorded the claim of interest, thereby slandering the title.

Defendant argued that plaintiff's slander of title action failed because it was required to prove that defendant's claimed interest was false; however, since title to the property belongs to the trust and because he is a trust beneficiary, he owns a legal interest in the property. Defendant's assertion that the subject real property belongs to the trust was premised upon his argument that

---

[2] David Katkin was also the trustee of the Katkin Family Irrevocable Trust No. 1.

[3] Plaintiff also relied upon MCR 2.116(C)(7), but the trial court ultimately held that is not the appropriate rule for the relief requested by plaintiff, and that issue is not raised on appeal.

three attempts were made to convey the property from the trust to plaintiff, but all were unsuccessful. First, according to defendant, the March 12, 2002 deed failed because the quit claim deed did not state that David Katkin was acting as successor trustee for the trust, it said he was acting under a durable power of attorney for Doris Katlin; therefore, since Doris Katlin did not own the subject real property at that time, her attorney-in-fact, David Katkin, could not transfer the property on her behalf.[4] Further, defendant argued, even if David Katkin had been acting as successor trustee at the time he executed the quit claim deed, transferring the property to plaintiff for no consideration would have been a breach of his fiduciary duty because, according to defendant, David Katkin and his wife were the owners of plaintiff (the limited partnership). The second attempt to convey the property, according to defendant, was a quit claim deed signed by Marlene Katkin, widow of David Katkin, in March 2014, transferring title of the property from herself to plaintiff, which was recorded the following month. Defendant argued that the 2014 quit claim deed was ineffective because Marlene did not own an interest in the property at that time. The third attempt occurred in 2017, according to defendant, when Robert Katkin, successor trustee of the trust, executed a trustee deed which purported to transfer the property to plaintiff. However, defendant argued that Robert Katkin was not actually the successor trustee at that time, because he did not have the consent of all of the beneficiaries at the time he appointed himself, in contradiction of the requirements of the trust. Finally, defendant argued that plaintiff could not prove that he filed the claim of interest with malice or that it suffered special damages.

In a reply brief, plaintiff argued, *inter alia*, that defendant had offered no admissible evidence regarding his allegations of David Katkin's self-dealing (i.e., breach of fiduciary duty) and that consideration for the transfer of the trust to plaintiff in 2002 consisted of 99% interest in plaintiff, a limited partnership, and that the trust subsequently sold its interest in the limited partnership for $300,000 under the security agreement and promissory note. Finally, plaintiff argued that the recording of the quit claim deed in 2002 constituted constructive notice to defendant that he had 15 years under the statute of limitations to bring a quiet title action to contest the recording of the deed, that defendant failed to file such an action, and defendant recorded the claim of interest with the register of deeds after the limitations period expired.

At the hearing for the cross-motions for summary disposition, defendant argued, *inter alia*, that David Katkin never filed a written acceptance of appointment as successor trustee, despite the fact that the trust required such a document in order to authorize a successor trust to act on behalf of the trust. Defense counsel then announced, "[s]o going forward, our position is David was never a successor trustee, and in fact, could not have been a successor trustee until Doris died, and he predeceased her, so he never became a successor trustee." Thus, defendant argued, David Katkin did not have authority to transfer the property in 2002. The court then asked defense counsel to concede that the proper remedy for the issue he just argued would have been a quiet title action, in response to which defendant argued the deed was void *ab initio*. After pressing defense counsel again on the question of the type of action defendant could file to obtain relief, counsel said the actions were fraud and quiet title. After the lengthy hearing, the trial court indicated that defendant's summary disposition motion would be denied, for reasons not relevant to this appeal, and indicated that the statute of limitations issue raised by plaintiff had not been sufficiently briefed

---

[4] We again note that David Katkin was the successor trustee at that time.

by the parties. As a result, plaintiff was permitted to refile its motion and the parties were instructed to brief the following issues: (1) what was the specific cause of action defendant could have filed regarding the subject real property and (2) would the statute of limitations have barred that action at the time defendant filed the claim of interest?

In support of its renewed motion for summary disposition, plaintiff made three arguments relevant here. First, plaintiff again argued that, to obtain the relief requested, defendant would have been required to file a quiet title action prior to the date on which he recorded a claim of interest. The quit claim deed was signed in March 2002, and filed in April 2002. Under MCL 600.5801(3), the period of limitation is 15 years. Plaintiff argued that defense counsel conceded, at the prior hearing, that the 15-year statute of limitations ran prior to November 2017, i.e., that the limitations period expired, at the latest, in April 2017. Regarding accrual of the claim, plaintiff relied upon MCL 600.5827, arguing that a claim accrues at the time the wrong is done and the damage occurs, meaning the claim in this matter accrued on the date the deed was recorded, on April 25, 2002. On the issue of fraud, plaintiff noted that limitations period for any alleged fraud would have been six years, pursuant to MCL 600.5813, i.e., the limitations period for fraud would have expired many years ago. Finally, plaintiff argued that any claim asserted by defendant that David Katkin improperly transferred the property as trustee in 2002 would also be barred because David Katkin died in late 2002, meaning that, pursuant to MCL 700.7905, the limitations period for such a claim would have expired sometime between 2003 and 2007, i.e., either a year after David Katkin's death or five years after his death (at the latest). Plaintiff's second argument relevant to this appeal was that defendant lacked standing to record a claim of interest regarding the subject real property as a beneficiary of the trust. More specifically, plaintiff argued that paragraph 8.1 of the trust stated that the trustee was vested with complete title to all property owned by the trust, meaning a beneficiary could never have a legally cognizable claim of interest to the subject property. Plaintiff's third argument was that, under MCL 700.7812, only the trustee has authority to enforce claims of the trust or to defend against such claims and that, because defendant was not the trustee, he was not the real party in interest at the time he recorded the claim of interest with the register of deeds and any actions filed by him at that time would have likewise failed because he would not have been the real party in interest in any such matter.

In his response, defendant noted that the court's instructions regarding additional briefing in this matter were limited to the statute of limitations issue, yet plaintiff raised additional issues anyway. Regarding the limitations issue, defendant argued that the recording of the 2002 quit claim deed did not transfer interest in the subject real property for two reasons. First, because Doris Katkin personally had no interest in the property at that time, and because David Katkin executed the deed on her behalf (as her attorney-in-fact under a durable power of attorney) the quit claim deed transferred nothing, i.e., Doris Katkin had no interest in the property, so her quit claim deed transferred no interest in the property. Second, David Katkin could not act on behalf of Doris Katkin because section 2.3 of the trust said that the powers of the grantor "shall not be exercised by any guardian, conservator *or other person*." Regardless of whether the quit claim deed was properly executed, defendant argued that the statute of limitations had not run at the time he filed the claim of interest because his claim on the subject real property did not accrue until the death of Doris Katkin at which time the trust became irrevocable. Prior to her death, defendant argued, he had only a future beneficial interest, which could have been revoked by Doris Katkin at any time, meaning that his right to any trust benefits did not vest until her death. Because Doris Katkin

did not die until September 2007, defendant asserts that the statute of limitations for any action he could have filed regarding the subject real property was September 2022 (i.e., 15 years after the death of Doris Katkin and five years after he recorded the claim of interest). In support of this argument, defendant relied upon MCL 600.5801, which says "[n]o person may bring or maintain any action for the recovery or possession of any lands or make any entry upon any lands unless, after the claim or right to make the entry first accrued to himself or to someone through whom he claims, he commences the action or makes the entry within the periods of time prescribed by this section." Thus, according to defendant, since his interest in the trust did not vest until 2007, his claim did not accrue until that time.

Regarding the issue of standing, defendant argued that he was able to file the claim of interest because he was a beneficiary of the trust at the time he filed the claim (i.e., his interest vested prior to the date on which he filed the claim). Finally, defendant argued that he was a real party in interest, relying upon *Hoffman v Auto Club Ins Ass'n*, 211 Mich App 55, 95; 535 NW2d 529 (1995), which says "[a] real party in interest is one who is vested with the right of action on a given claim, although the beneficial interest may be in another." Defendant argued that plaintiff's assertion regarding the real party in interest was misplaced because he was not prosecuting a claim in the present case; rather, plaintiff was prosecuting the claim here, and defendant was prosecuting a claim in probate court to remove Robert Katkin as trustee and to have himself appointed as successor trustee.

Plaintiff filed a reply, pointing to the prior motion hearing where it alleged that defense counsel conceded that if the trial court rules that the limitations period started running in 2002, then defendant's claim is barred by the statute of limitations. Plaintiff also argued that defense counsel likewise conceded that that the proper action plaintiff could have filed was a quiet title action, meaning the 15-year limitations period applies and defendant's argument about his status as a contingent versus a vested beneficiary is irrelevant. Further, plaintiff argued defense counsel effectively conceded that defendant lacked standing to file the claim of interest when counsel admitted that defendant was seeking to remove Robert Katkin as trustee of the trust so that defendant could be appointed trustee and pursue the issue of the subject real property's title. In other words, plaintiff argues that defendant has conceded that a quiet title action could only be filed by the trustee, i.e., only the trustee could bring that action, and here there is no dispute that the limitations period expired before plaintiff recorded the claim of interest.[5] Additionally, plaintiff argued that defendant's assertion that his claim did not accrue until Doris Katkin died is contradicted by caselaw holding that a claim accrues when the alleged wrong is committed, relying

---

[5] Plaintiff also argued that the statute upon which defendant relied, MCL 600.5201(3), did not apply because the right to the subject real property arose out of a trust, not a will. The reference to section 5201 appears to be a typographical error because defendant did not rely upon that section, which is not relevant to any issue in this case. Presumably, plaintiff meant to reference section 5801(3), which pertains to a defendant claiming title through a devise in a will. However, defendant explicitly stated he did not rely upon subsection (3), he relied upon subsection (4), which is a catchall provision that states: "In all other cases under this section, the period of limitations is 15 years."

upon *Boyle v General Motors Corp*, 468 Mich 226, 231; 661 NW2d 557 (2003), and that the wrong being alleged by defendant was the transfer of title that occurred in March 2002.[6] Finally, because the trust code relied upon by defendant includes future beneficiaries, and because it does not differentiate between contingent or vested beneficiaries, any right defendant had to file a claim regarding the transfer of the subject property accrued in March 2002 and expired in March 2017.

In September 2019, the trial court issued an opinion and order regarding the cross-motions. The court determined that the statute of limitations was either five years or 15 years, and that the claim recorded by defendant in November 2017, was barred by the statute of limitations at the time he recorded it, based on the quit claim deed signed in March 2002 and filed in April 2002. Relying upon *Wild v Wild*, 266 Mich 570; 254 NW 208 (1934), the court held that the recording of the deed placed the world on notice of the transfer of the property. Further, it found that defendant received a copy of the estate planning documents at issue in 2002, at the time of David Katkin's death, and also received regular accountings of the trust since 2007, showing that the trust continued to receive payments from the sale of the trust's interest in the property. The court found no merit to defendant's claims regarding fraud because the limitations period for any fraud claim would likewise have expired prior to the time defendant recorded the claim of interest. The court noted that, even if it had not reached its decision on the running of the statute of limitations on a potential cause of action, defendant was not a real party interest to such an action at the time that he recorded the claim of interest, i.e., he "did not have a lawful cause to file the claim of interest." Under MCL 700.7801, the court reasoned that any action must be brought in the name of the trustee, and therefore defendant did not have an actionable claim of interest in the property. As a result, the claim of interest he recorded was in derogation of the statute and must be withdrawn. Thus, the court granted plaintiff's motion for summary disposition, in part, pursuant to MCR 2.116(C)(10). However, the opinion and order noted that to prevail on its slander of title claim, plaintiff was not simply required to prove the falsity of the statement made (i.e., that defendant had a legally recognizable interest in the property), it must also show malice and special damages; and, accordingly, the case would move forward on those issues.[7]

Defendant filed a motion for reconsideration, which was denied by the trial court because "[t]he motion presents issues that were already ruled upon by the [c]ourt, either expressly or by implication, and rests on legal theories and facts which could have been argued prior to the [c]ourt's decision."

The trial court then entered an order declaring that the trust and defendant do not have a legal interest in the subject real property and that the claim of interest is hereby "released, terminated, set aside and held for naught."

---

[6] The section of *Boyle* upon which defendant relied actually said "[u]nder MCL 600.5827 a claim accrues when the wrong is done, unless §§ 5829 to 5838 apply." *Id*. Because MCL 600.5829 is applicable in this case, plaintiff's reliance upon *Boyle* was misplaced.

[7] The court also denied defendant's motion for summary disposition for reasons not pertinent to this appeal.

Defendant filed an application for leave to appeal the trial court's decision that this Court denied. *DBK & DEK Limited Partnership, LP, v Alan Katkin*, unpublished order of the Court of Appeals, entered February 26, 2020 (Docket No. 351131).

A bifurcated bench trial was scheduled on the remaining issues, with the first portion to address the issue of slander of title and, if necessary, the second portion to address damages.

## B. BIFURCATED TRIAL ISSUE ONE—SLANDER OF TITLE

In June 2022, the court held the first portion of the bench trial, which lasted four days. In January 2023, the court issued written findings of fact and conclusions of law, finding that David Katkin was named and acted as successor trustee to the trust and was also appointed as Doris Katkin's agent (i.e., attorney-in-fact) under a durable power of attorney over her affairs, including the power to establish businesses for her benefit and for estate planning on her behalf. The court further found the following: that plaintiff is a limited partnership that has title and ownership of the subject real property; and that it owns, manages and collects rents on the property, and has done so for over 20 years, with proceeds being distributed to the partners. It noted that, initially, the general partner of plaintiff was a holding company (the holding company) that had 1% ownership and the trust was the limited partner with 99% ownership. The court also noted that Marlene Katkin, the widow of David Katkin, is a partner in the limited partnership and receives income in that capacity. The court found that, before his death in 2002, David Katkin, acting via power of attorney for his mother, established "the Katkin Family Irrevocable Trust 1 (KFIT1) and Trust 2 (KFIT2)." Importantly, the trial court also found the following:

> On December 3, 2002, David, as Trustee, sold Doris Katkin Trust's 71.4% interest in the DBK & DEK Limited Partnership to the KFIT1 for $300,000.00. Payments have been consistently made on this Note. The other 27.6% of DBK and DEK was transferred to the KFIT1.
>
> *As a part of the sale transaction between DKRT and KFIT1, David Katkin executed a quit claim deed transferring DKRT's interest the subject property to DBK & DEK.* The deed recites Doris Katkin as the owner, and identifies David Katkin as her agent under a durable power of attorney.[8] [(Emphasis added).]

The court found that, at the time of his father David Katkin's's death in late 2002, defendant received a copy of the deed transferring the subject real property in March 2002 (recorded in April 2002), as well as other relevant estate planning documents. Further, the court found that, for the past 21 years, thousands of dollars of monthly payments under the purchase agreement/promissory note for the $300,000 purchase of the property have been paid, first to Doris Katkin, then to the trustees of the trust, all known to defendant; and that, despite the fact that the trustees have employed attorneys and accountants throughout that time, none of them ever questioned the

---

[8] The court also noted that, "under the Estate plan documents set up in 2002, after the passing of David Katkin, the general and limited partnership interest in DBK & DEK Limited Partnership passed from KFIT1 to KFIT2."

-7-

validity of the transactions and each accepted the payments made to the trust, including Doris Katkin, who received the payments from 2002 to the time of her death in 2007.

The court then noted that, after defendant's attorney took issue with the nature of the signature on the quit claim deed in 2017, Robert Katkin signed a deed of trustee to clear up any potential issues with the 2002 quit claim deed.

Regarding defendant's testimony at trial, the court found that, while defendant claimed to suffer from issues with reading comprehension that were both unidentified and undocumented, he was a relatively successful businessman and was evasive to the point that he lacked credibility. More specifically, the court said the following:

> It was almost painful watching the mental and physical gyrations [d]efendant went through as he tried to figure out which answer to a question best suited his case. His calculations did not seem to include whether his testimony was true. He would frequently look to his lawyer for a sign as to how he should answer a question and did not hesitate to change his testimony or feign ignorance and lack of memory.[9]

Despite defendant's attempts to avoid answering questions, the court nonetheless found that several propositions were supported. He knew about the subject real property since he was a child and knew that it had been transferred out of the trust in 2002 via a quit claim deed signed by his father as attorney-in-fact. Defendant received yearly accountings from the KFIT2. In addition, at the time of defendant's father's death, he learned that "he would be receiving only five (5%) percent of the residue of his grandmother's trust, not the one-third (1/3) share he had previously anticipated." The court then detailed a "string of litigation" in which defendant attempted to gain a larger portion of his grandparent's wealth.

> Defendant understood that in a revocable trust, his grandmother, Doris Katkin, had the right to transfer the Rochester Property out of her trust. He understood that he was not the beneficiary of things that his grandmother chose to take out of her trust.

> Defendant admitted that he had zeroed in on the legitimacy of the transfer of the Rochester property out of the trust since the first time he found out about it in 2002.

> Despite refusing to acknowledge the authenticity of court pleadings that were in his possession and disclosed during the course of discovery, [d]efendant

_____

[9] The court also noted, "[d]efendant claimed he did not read his mail. He claimed he relied on his mother or [girlfriend] to let him know if he had correspondence he should review or respond to. He denied knowledge of the existence of many documents, or a memory of actions that he had taken. He even claimed he had never read the Doris Katkin Trust and therefore could not verify that he was a beneficiary."

acknowledged that he went to lawyers to try to find out what happened to the Rochester property and filed lawsuits in pursuit of that goal.

In 2003 he filed suit against his stepmother, Marlene Katkin, the Katkin Investment Company and the Estate of David Katkin[,] which was dismissed for failing to state a cause of action as to Marlene and lack of subject matter jurisdiction over the estate.

Also in 2003, [d]efendant filed a Caveat By Interested Persons in Broward County Probate Court requesting that the court not admit a will or appoint a personal representative of the estate of David Katkin without providing him formal notice.

In 2004 Defendant sought to gain guardianship and conservatorship of his grandmother Doris Katkin despite having not seen her in years.

Defendant hired attorney David Goldenberg to attend a meeting and find out information about the various trusts.

In 2009, [d]efendant filed suit again against his stepmother Marlene as Trustee of the Katkin Family Irrevocable Trust.

Defendant's mother saved reams of correspondence with lawyers and documents concerning Doris and David Katkin and their estates and legal action relating thereto. These documents were in the possession of the [d]efendant. While [d]efendant claims not to know what all of the documents contained, his girlfriend Pam McCoy testified that they would [have] been read to him upon receipt.

Defendant stated he does not read business mail, or it appears any mail.

Pamela McCoy testified she opens [d]efendant's mail and decides whether he needs to see it. She stated it was [d]efendant's decision to let her do that.

McCoy opened mail about other lawsuits and talked to attorney Richard Chosid. She stated nine lawyers had been hired on [d]efendant's behalf.

The court's opinion noted that none of defendant's attempts resulted in the successful disruption of his grandparents' estate planning, including producing no evidence upon which he could prove an interest in the subject real property. At trial, when asked to state the facts on which his claim of interest is based, the court noted that defendant's answer was "[m]y attorneys have that information."

The court found it noteworthy that the deed by which defendant's grandmother gave defendant her interest in the house where defendant resides was accomplished by the same method he was challenging at trial, a deed signed by David Katkin as attorney-in-fact under a power of

attorney, as opposed to being signed as successor trustee, yet he was not challenging the deed that gave him ownership to his own house.[10]

The court further noted that defendant testified that the decision to file the claim of interest was his own and that he knew it would impede the property owner's rights.[11]

Findings of law were then made on the slander of title issue. Having previously found that defendant did not have cause to file a claim of interest, i.e., that his claim to have an interest in the property was false, the court turned to the issue of malice. Acknowledging that it was not a binding precedent, the court found persuasive this Court's opinion in *Ombremskey v Anderson*, unpublished per curiam opinion of the Court of Appeals, issued May 28, 2009 (Docket No. 282853). In that case, the defendant filed an affidavit of interest in real property after sending the property owner an "Acceptance of Offer," despite the fact that an offer was never made to him. The defendant then refused to remove the cloud on the title, and plaintiff subsequently accepted an offer on the property. The facts showed that the defendant had no reasonable basis to believe that a valid offer had been made, meaning he had no legal basis to file the affidavit of interest and, as a result, the filing of the affidavit slandered the title of the property. Comparing the present case to *Ombremskey*, the court found that defendant knew that the property was no longer in the trust at the time of his father's passing, and was aware that Marlene Katkin was making payments on the purchase agreement and operated plaintiff (the limited partnership). Defendant also retained several lawyers over the years to investigate and gain interest to the subject real property, even suing Marlene Katkin twice in Florida. The court noted that, while he had filed those claims against Marlene Katkin, he had not contacted his father's estate planning lawyers, claimed not to read his mail, claimed not to have read the trust, and even claimed he did not know if he was a beneficiary. The court found that the attorney who advised plaintiff to file the claim of interest purposefully avoided contacting any of his five previous lawyers, even though he was aware of prior litigation, did not read any of the prior courts' opinions, never reviewed any documents in defendant's possession, and never asked to review David Katkin's estate planning documents.

The court found that these actions by defendant and his attorney are not evidence of a reasonable or probable cause for believing that defendant had a valid, actionable claim in the subject real property. Rather, their ignorance constituted purposeful avoidance of the truth, "and evidence of a deliberate decision not to acquire knowledge of facts that would confirm the invalidity of the claim of interest. This is a reckless disregard for the truth." Further, the court held that there was no good faith basis upon which defendant could claim he had the right to claim an interest in the subject real property. "He was not the trustee, nor, at the time he filed his [claim

---

[10] The court also noted that it appeared defendant had never repaid his grandmother for the money she loaned him to purchase his house.

[11] Defendant's seventh attorney also testified at trial. Although he drafted the claim of interest and advised defendant to file it, based on his investigation of this matter, he testified that it was ultimately defendant's decision as to whether he should file it. His testimony also established that he had not reviewed a crate full of documents in defendant's possession regarding the prior court filings made by defendant pertaining to his grandparents' estate planning.

of interest] had he taken any steps to attempt to install himself as trustee or file an actual challenge to the deed he claims was invalid."

The court noted that defendant's assertion that he was acting on the advice of counsel was relevant, but not absolute. Such an argument would require no knowledge of the law. Because the advice allegedly followed by defendant was from the ninth attorney he had retained to attempt to obtain a larger portion of his family's wealth, the court found "it is impossible to find that [d]efendant had no knowledge of the law." In fact, the court found that, not only did he have knowledge of the law, obtained from the prior attempts to thwart his grandparents' estate planning, he testified that he knew Doris Katkin had the right to transfer the subject real property out of her trust and understood that he was not the beneficiary of the "things that his grandmother chose to take out of her trust." Additionally, the court noted defendant's testimony in which he acknowledged the decision to file the claim was his own, which fact was also corroborated by the trial testimony of his attorney. "Defendant further stated that he knew the [claim of interest] would impede the property owner's rights. The fact that [d]efendant consulted an attorney does not cleanse him of this malice."

Finally, the court again relied upon *Ombremskey*, in which the defendant, rather than file an action to enforce his alleged rights, clouded title by recording an affidavit with the register of deeds. The trial court in that case found that these actions demonstrated that defendant was attempting to pressure the plaintiff into selling the property to the defendant (at a reduced price), rather than reasonably believing that his "Acceptance of Offer" formed a binding contract. This Court not only affirmed the trial court's decision, it remanded the matter for a determination of fees and costs for a vexatious appeal pursuant to MCR 7.216(C).[12] *Ombremskey*, unpub op at 12. The trial court likened the facts of this case to those in *Ombremskey*:

> Similarly in this case, [d]efendant did not file an action in the [p]robate court to attempt to address the alleged flaw in the transfer of the property to [p]laintiff, rather, [d]efendant filed the subject [c]laim of [i]nterest. As in *Obremskey*, this can only be interpreted as an attempt to put pressure on [p]laintiff and Marlene Katkin to capitulate to [d]efendant's continuing attempts to seize a larger portion of the family wealth." [(Footnote omitted).][13]

In conclusion, the court held that defendant acted with malice when filing the claim of interest against the subject real property.

---

[12] Under MCR 7.126(C), this Court may assess actual damages when it determines that an appeal was vexatious for the reasons stated in the rule and it "may remand the case to the trial court or tribunal for a determination of actual damages."

[13] In the footnote, the court mentioned that defendant did eventually file such an action, but not until over eight months after recording the claim of interest.

## C. BIFURCATED TRIAL ISSUE TWO—DAMAGES

On April 7, 2023 and July 7, 2023, the court conducted the second portion of the bifurcated trial on the issue of damages. The proceedings lasted over 10 hours with the vast majority of that time consisting of defendant cross-examining one of plaintiff's attorneys, Scott Rooney, who was the only witness. Plaintiff took testimony from Rooney regarding attorney fees and costs incurred by plaintiff as a result of defendant's slander of title, and admitted business records from Rooney's law firm as further evidence regarding same. Plaintiff calculated the attorney fees by multiplying the number of hours that Rooney and his partner spent working on this matter by a rate of $250 per hour. The costs incurred included travel expenses, filing fees, copying costs deposition fees and postage.[14] Defendant called no witnesses to rebut any of this evidence.

The court held that, based on the evidence admitted at trial, plaintiff incurred $269,720 in attorney fees for its defense of the title slandered by defendant. The court found that the services were actually rendered and that the fees were reasonable. Regarding the hourly rate charged by Rooney and his partner, the court found that it was reasonable because it was actually less than what could have been charged based on the State Bar of Michigan Economic Survey of Lawyers and the court's familiarity with legal fees being charged in the community. The court also held that plaintiff incurred $21,969 in costs as a result of defendant's actions, that these costs were actually incurred and were a reasonable outlay of money for plaintiff to have expended in this matter. The court noted that MCL 565.108, and cases interpreting the statute, indicate that "attorney fees and costs may be awarded, in the court's discretion, for all expenses involved in the action." The court further explained

> this case is not a case where attorney fees are a collateral decision to be made for a prevailing party or under statutes and court rules such as the case evaluation rules. Rather, the court must decide what [p]laintiff has actually expended to clear the cloud on title created by [d]efendant, as those are its damages caused by [d]efendant's actions.

The court ordered defendant to pay plaintiff as total of "$291,689 in damages as compensation for his slander of title to [p]laintiff's real property." This appeal followed.

## II. STANDARD OF REVIEW

A trial court's ruling on a motion for summary disposition is reviewed de novo. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999).

> A motion under MCR 2.116(C)(10) . . . tests the factual sufficiency of a claim. When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion. A

---

[14] An exhibit proffered by plaintiff in support of these costs was not admitted as evidence, but Rooney testified in support of the itemized costs, i.e., that each cost was incurred.

motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact. A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ. [*El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019) (internal quotation marks and citations omitted).]

In reviewing a motion under MCR 2.116(C)(10), a court must examine the pleadings, affidavits, depositions, admissions, and any other documentary evidence submitted by the parties and, drawing all reasonable inferences in favor of the nonmoving party, determine whether a genuine issue of material fact exists. MCR 2.116(G)(5); *Maiden*, 461 Mich at 120; *Downey v Charlevoix County Bd of Road Comm'rs*, 227 Mich App 621, 626; 576 NW2d 712 (1998). "Circumstantial evidence can be evaluated and utilized in regard to determining whether a genuine issue of material fact exists for purposes of summary disposition." *Bergen v Baker*, 264 Mich App 376, 387; 691 NW2d 770 (2004). If reasonable minds could differ as to the conclusions to be drawn from the evidence, a question of fact exists. *West v Gen'l Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

In an appeal following a bench trial, this Court reviews the trial court's findings of fact for clear error and its conclusions of law de novo. *Avery v Michigan*, 345 Mich App 705, 715; 9 NW3d 115 (2023). To the extent that a party contends that some of the trial court's factual findings are against the great weight of the evidence, in the context of a bench trial, a great-weight challenge is considered under the "clearly erroneous" standard. *Id*. A trial court's factual finding will be held clearly erroneous if it is not supported by the evidence or if this Court is left with a definite and firm conviction that the trial court made a mistake. *Id*. at 715-716. In reviewing the trial court's factual findings, this Court affords great deference to the trial court's superior ability to gauge the credibility of the witnesses who appeared before the court to testify. *Id*. at 716.

Issues of statutory construction are reviewed de novo. *Bristol Window & Door, Inc v Hoogenstyn*, 250 Mich App 478, 484; 650 NW2d 670 (2002).

The award of attorney fees will be set aside if it constitutes an abuse of discretion. *Beach v State Farm Auto Ins Co* 216 Mich App 612, 625-626; 550 NW2d 580 (1996).

### III. LAW AND ANALYSIS

Defendant raises the following four issues on appeal: the trial court erred by finding that he lacked standing to assert an interest in the subject real property, the statute of limitations did not bar his claim, the trial court erred by determining that he acted with malice, and the court erred when it granted the entirety of the attorney fees and costs requested by plaintiff.

For the reasons explained below, we need not decide the issue of whether defendant had standing to assert the interest in the subject real property.

### A. STATUTE OF LIMITATIONS

Defendant argues that the trial court erred by finding that the statute of limitations would have barred his claim on the subject property at the time he filed the claim of interest in November

-13-

2017. Defendant asserts that there have been three unsuccessful attempts to convey the subject property, arguing that the trust still owned the property at the time he filed the claim of interest, meaning that the statute of limitations could not have expired.

As a preliminary matter, we note that the statute of limitations creates a bar against the filing of a cause of action after the limitations period.[15] While it is often referred to as a law barring claims, those claims are causes of action.[16] The trial court in the present case did not hold that the statute of limitations barred defendant from recording a claim of interest with the register of deeds in November 2017; rather, it held that the statute of limitations as to any cause of action defendant could have filed regarding the subject real property, such as a quiet title action, expired prior to November 2017, and that defendant's recording of the claim of interest, despite the fact that the statute of limitations had passed, constituted slander of title.[17]

According to defendant, the first unsuccessful attempt to convey the subject real property occurred when David Katkin signed the quit claim deed in March 2002, acting under power of attorney for Doris Katkin. David Katkin could not have actually transferred any interest in the property, argues defendant, because Doris Katkin no longer owned an interest in the property, due to the fact that she transferred it to the trust in 1994 (following the death of her husband). As a result, defendant says that deed was void *ab initio*, meaning it had no legal effect and transferred nothing. But, of course, the problem with defendant's argument is that any cause of action through which he could seek an order from a court declaring the recorded deed void *ab initio* has been barred by the statute of limitations since April 2017. As the trial court noted, the legal action through which defendant could have sought that relief is a quiet title action. Both parties agree that the statute of limitations pertaining to this matter is 15 years and both parties agree that

---

[15] "A 'statute of limitations' is a 'law that bars claims after a specified period; specif[ically], a statute establishing a time limit for suing in a civil case, based on the date when the claim accrued.' " *Frank v Linker* 500 Mich 133, 142; 894 NW2d 574 (2017), citing Black's Law Dictionary (10th ed). See also *Vanslembrouck v Halperin*, 483 Mich 965, 965; 763 NW2d 919 (2009) (Corrigan, J., dissenting), citing Black's Law Dictionary (7th ed). (" '[S]tatute of limitations' is a legal term of art describing statutes that set 'a time limit for suing . . . based on the date when the claim accrued . . . .")

[16] The statute of limitations does not bar a person from recording a document with the register of deeds; however, as explained herein, recording a claim of interest based on a potential cause of action that the filer knows to be barred by the statute of limitations could subject that filer to liability for slander of title under MCL 565.108.

[17] This is an important distinction because, throughout this case, including in his brief on appeal, defendant has attempted to blur the lines between the action he took when he recorded the claim of interest with the register of deeds and the laws that pertain to actions in probate and circuit courts. The register of deeds is not a court of law. Thus, for example, recording a notice with the register of deeds would not toll the statute of limitations for an action to quiet title.

defendant recorded his claim of interest more than 15 years after the quit claim deed was recorded in April 2002.

Defendant cites to two cases for the proposition that a conveyance by a party with no interest in the property conveys nothing, *Richards v Tibaldi*, 272 Mich App 522; 540; 726 NW2d 770 (2006), and *von Meding v Strahl*, 319 Mich 598, 608; 30 NW2d 363 (1948). In addition, defendant relies upon *Special Property VI LLC v Woodruff*, 273 Mich App 586, 591; 730 NW2d 753 (2007), in which this court, quoting *von Meding*, noted that "the recording of an instrument cannot, of itself, make an invalid grant valid." But the actions that resulted in the court ordering title to be quieted to the defendant in *Richards* were filed less than two years after the deed in that case was recorded, i.e., there was no statute of limitations issue in that case. Likewise, there were no statute of limitations issues in *von Meding* or *Special Property*—the action in *von Meding* was filed about 10 months after the deed was recorded and the action in *Special Property* was filed less than four years after the oldest competing deed.

To the extent defendant argues that he did not have notice of the filing of the quit claim deed in April 2002, we note that MCL 565.25(4) read as follows, at that time:

> The instrument shall be considered as recorded at the time so noted and shall be notice to all persons except the recorded landowner subject to subsection (2), of the liens, rights, and interests acquired by or involved in the proceedings. All subsequent owners or encumbrances shall take subject to the perfected liens, rights, or interests.[18]

Nothing in the record before us suggests that defendant was the recorded landowner in April 2002, when the quit claim deed was recorded. Defendant concedes that, at best, he had a contingent future interest in the property at that time, which had not yet vested, and defendant does not allege that his contingent future interest was recorded. Thus, at the time the deed was recorded in April 2002, such recording was notice to defendant. *Id.*; *Adams v Adams*, 276 Mich App 704, 720 n 8; 742 NW2d 399 (2007).

Defendant also argues that the cause of action pertaining to the property did not accrue until Doris Katkin died in 2007, which vested his interest as a beneficiary to the trust and any trust assets, including the subject real property. For this argument, defendant relies upon MCL 600.5801, which in relevant part states: "[n]o person may bring or maintain any action for the recovery or possession of any lands or make any entry upon any lands unless, after the claim or right to make the entry first accrued to himself or to someone through whom he claims, he commences the action or makes the entry within the periods of time prescribed by this section." Defendant argues that the claim did not accrue to *him* until his interest in the trust (and the subject real property) vested. But defendant ignores the phrase "or to someone through whom he claims." Defendant claims interest in the subject real property through the trust, i.e., as a beneficiary of the trust. There is no question that, if the trust had the right to quiet title against plaintiff, such an

---

[18] MCL 565.25 was amended, effective December 23, 2008, at which time subsection (4) was deleted.

action accrued in April 2002, when a quit claim deed was recorded transferring the subject real property from the trust to plaintiff. Under MCL 600.5829: "The right to make an entry on, and the claim to recover land accrue: (1) Whenever any person is disseised, his right of entry on and claim to recover land accrue at the time of his disseisin." The trust's disseisin occurred when the deed was recorded in April 2002, meaning the claim accrued at that time.

Because defendant is not able to challenge the transfer to the subject property to plaintiff in 2002, we need not decide defendant's argument that subsequent unsuccessful attempts were made to transfer the property.

Thus, we find that the trial court did not err when it determined that, at the time plaintiff recorded the claim of interest in this matter, the statute of limitations had expired as to any action defendant may have had against plaintiff.

B. MALICE

Defendant next argues that the trial court erred by finding that he acted with malice when he recorded the claim of interest.

Slander of title in Michigan can be based on the common law or statute. *B&B Investment*, 229 Mich App at 8. Under the common law, in order to prove an action for slander of title, a plaintiff must establish the following elements: falsity, malice, and special damages, "i.e., that the defendant maliciously published false statements that disparaged a plaintiff's right in property, causing special damages." *Id.* As this Court has previously explained:

> The crucial element is malice. A slander of title claimant must show some act of express malice, which implies a desire or intention to injure. Malice may not be inferred merely from the filing of an invalid lien; the plaintiff must show that the defendant knowingly filed an invalid lien with the intent to cause the plaintiff injury. A plaintiff may not maintain a slander of title claim if the defendant's claim under the mortgage [or lien] was asserted in good faith upon probable cause or was prompted by a reasonable belief that [the defendant] had rights in the real estate in question . . . . [*Wells Fargo Bank v Country Place Condo Ass'n*, 304 Mich App 582, 596; 848 NW2d 425 (2014) (citations and quotation marks omitted)].

The statutory basis for slander of title is contained in MCL 600.2907a, which states as follows:

> (1) A person who violates section 25 of chapter 65 of the Revised Statutes of 1846, being section 565.25 of the Michigan Compiled Laws, by encumbering property through the recording of a document without lawful cause with the intent to harass or intimidate any person is liable to the owner of the property encumbered for all of the following:

> (a) All of the costs incurred in bringing an action under section 25 of chapter 65 of the Revised Statutes of 1846, including actual attorney fees.

-16-

(b) All damages the owner of the property may have sustained as a result of the filing of the encumbrance.

(c) Exemplary damages.

Regarding the trial court's findings of fact on the issue of malice, we find that the court did not clearly err because they were supported by the evidence. *Avery*, 345 Mich App at 715. The record supports the trial court's findings that defendant knew that the property had been transferred out of the trust for more than a decade, knew that his status as a trust beneficiary did not give him ownership interest in property that Doris Katkin took out of the trust, and knew that the payments had continuously been made by Marlene Katkin to satisfy the purchase agreement for the subject real property. Further, the record indicates that defendant retained several lawyers over the course of many years to investigate claims he may have had to his grandparents' estate, and filed two lawsuits against plaintiff's agent, Marlene Katkin, in Florida. Thus, the trial court did not clearly err when it determined that he was not ignorant of the law.[19]

We also find that the trial court did not err in finding that defendant acted with malice when he recorded the claim of interest in November 2017. Like the trial court, we find this Court's unpublished decision in *Obremskey* to be persuasive.[20] In November 2017, if defendant believed he still had a legal claim to the subject real property, defendant could have filed an action to quiet title in court. Instead, he chose to record a claim of interest with the register of deeds, which would instantly cloud the title of the subject real estate. His actions are similar to the defendant in *Obremskey*, who filed an affidavit of interest in real property, instead of filing an action to enforce his alleged rights under contract. Just as the defendant in that case was found to have attempted to pressure the plaintiff into selling the property at the reduced price, we agree with the trial court in the instant case that, rather than file an action to quiet title, defendant's recording of a claim of interest with the register of deeds "can only be interpreted as an attempt to put pressure on [p]laintiff and Marlene Katkin to capitulate to [d]efendant's continuing attempts to seize a larger portion of the family wealth."

## C. ATTORNEY FEES AND COSTS

Defendant also argues that the trial court erred when it granted the entirety of the attorney fees and costs plaintiff requested.

---

[19] We note that the testimony of defendant's former attorney supports the finding that plaintiff was not ignorant of the relevant law here. Considering that testimony, in concert with the other evidence in this case, the record supports the finding that defendant was aware that recording a claim of interest would violate MCL 600.2907a, yet he filed it nonetheless.

[20] "Although MCR 7.215(C)(1) provides that unpublished opinions are not binding under the rule of stare decisis, a court may nonetheless consider such opinions for their instructive or persuasive value." *Kennard v Liberty Mut Ins Co*, 341 Mich App 47, 53 n 2; 988 NW2d 797 (2022) (citation and quotation marks omitted).

This Court reviews the ultimate decision to award attorney fees for an abuse of discretion. *Beach*, 216 Mich App at 625-626. But, because we review a trial court's findings of fact for clear error, *Avery*, 345 Mich App at 715, any finding by the court that plaintiff incurred a specific attorney fee or cost is reviewed under the clearly erroneous standard.

First, defendant argues that Scott Rooney was cross-examined at the time of trial about the contents of several e-mails that were listed on an exhibit itemizing the hourly billings, that he could not state what the contents of the e-mails were, and that he did not attach the e-mails so as to demonstrate that they related to the slander of title action. While it is true that plaintiff did not record the contents of the e-mails in the exhibit that was admitted to support its itemized hourly billings in this case, and that Scott Rooney admitted on cross-examination that the exhibit did not specifically explain the content of each e-mail, defendant fails to mention that Rooney offered multiple times to describe the contents during cross-examination, but defense counsel ignored him each time and moved on to the next question. Thus, while defendant implies that this testimony established Rooney could not verify the content of those e-mails, what it actually established was that defendant either did not want to know the content of those e-mails or did not want the finder of fact to hear those details. Regardless, such cross-examination did not rebut Rooney's testimony on direct examination that the exhibit itemized the tasks performed by him and his partner and the hours they spent working on this matter.

Defendant also argues there were numerous entries in the hourly itemization for matters that were not related to the slander of title action, again citing to Rooney's cross-examination testimony for support, yet defendant provides no analysis as to what specific entries he claims were unrelated or why he believes they were unrelated. A review of testimony cited by defendant mostly consists of defense counsel asking Rooney to agree with various arguments being made by defendant and Rooney either disagreeing with defendant's assertion or outright refuting it. By way of example, at trial on April 7, 2023, defense counsel asked Rooney to admit that a billed telephone conference with an attorney who appeared in the probate case was not related to the slander of title action. Rooney rejected that assertion by explaining that the attorney in question was also the attorney handling the checks that were paid to the trust under the purchase agreement for the subject real property and that those checks were admitted as an exhibit in this case (to prove, *inter alia*, that consideration was paid for the transfer of the real property). Again, defendant provides no analysis as to how this testimony supports his assertion that plaintiff's attorneys billed for time that was unrelated to this case. "A party may not simply announce its position and leave it to this Court to discover and rationalize the basis for the party's claim." *Badiee v Brighton Area Schools*, 265 Mich App 343, 357; 695 NW2d 521 (2005) (citations and quotation marks omitted).

Next defendant argues that numerous time entries were vague and that Rooney testified numerous times that he did not know the subject matter of the entry. But, again, a review of the record belies defendant's assertion. The record demonstrates that Rooney was asked to admit that various entries did not explain the subject of various communications, such as e-mails or telephone calls, but defendant often did not follow up by asking Rooney what the subjects were, i.e., he failed to sufficiently cross-examine defendant to refute Rooney's testimony on direct examination that the exhibit represented an itemization of the time he and his colleagues worked on this case. On the occasions when defense counsel did follow up, Rooney typically provided that information. By way of example, defendant relies upon April 7, 2023 trial testimony wherein Rooney was asked to admit that there was no discovery requests in this case on August 31, 2018, despite the fact that

there was an entry for reviewing discovery on that date. In response, Rooney explained that he was considering serving a discovery request and was reviewing it on that date. Again, other than citing to the transcript, defendant provides no explanation or argument as to why the trial court clearly erred by finding that those attorney fees were actually incurred in this case. *Id*.

Other assertions contained in defendant's brief on appeal are also either unsupported or contradicted by the record. For example, defendant alleges that an October 22, 2018 billing, regarding review of a proposed order appointing a facilitator in the probate action is not related to this case, yet defendant fails to mention that the testimony taken at trial indicated that there was no charge for that item. Defendant also argues that any time Rooney or his partner charged for time spent performing tasks that arguably could have been performed by clerical staff, such as copying copies of documents, could not be charged as attorney fees, yet he provides no authority whatsoever for the proposition that attorneys have to cease billing for their time when they get up to use the copier. Defendant argues that there were numerous times that Rooney and his partner charged for the same task, yet fails to provide a single example of this, nor does he cite to anything in the record in support of that assertion. Defendant also makes the novel argument that the court could not award damages for attorney fees or costs incurred consulting with experts who were not ultimately named as witnesses in this slander of title action, without citation to any authority for that contention.

All but one of defendant's arguments pertaining to many of the costs awarded by the trial court fail to demonstrate that the court clearly erred by finding that those costs were incurred in this matter. For example, defendant argues that the costs of deposition transcripts that were not filed in this case should not have been awarded, but the case upon which defendant relies, *Guerrero v Smith*, 280 Mich App 647, 674; 761 NW2d 723 (2008), pertained to taxable costs awarded to a party pursuant to the Michigan Court Rules, which allow a prevailing party to tax costs for the use of depositions at trial, but only when they have been filed with the trial court. Again, the costs awarded in the instant matter were awarded pursuant to MCL 565.108, not the court rule at issue in *Guerrero*.

Defendant argues that costs for clerical work should not be awarded, yet provides no evidence to rebut the finding that those costs were incurred and cites to no authority indicating that it was an abuse of discretion for the trial court to award those costs in this matter pursuant to MCL 565.108.

As noted above, we agree with defendant that the trial court clearly erred by awarding costs incurred for one of the items contained in plaintiff's itemization, which was a fee payment to the State of Delaware in the amount $102 to allow continuation of plaintiff's limited partnership status in Delaware. That fee should not have been included in the costs awarded in this matter under MCL 565.108, because the trial testimony of Rooney showed that it would have been incurred regardless of whether defendant slandered the title of the subject real property.

Regarding the remaining costs to which defendant objects, he provides no direct or circumstantial evidence that any of these costs were not incurred. Instead, he simply speculates that they did not involve this matter. By way of example, defendant objects to plaintiff being reimbursed for costs incurred for transcripts from the probate action, but produces no evidence to rebut Rooney's testimony that the costs were incurred in this case, e.g., there is no evidence

demonstrating that the transcripts were not reviewed or otherwise used by plaintiff or his attorneys in the present case, such as preparing a witness list or preparing for depositions or trial.

With regard to the hourly attorney fee rate awarded by the trial court, defendant argues that the trial court erred by finding that *Smith v Khouri*, 481 Mich 519; 751 NW2d 472 (2008), did not apply to this case. Plaintiff argues that *Khouri* is distinguishable because that case addressed whether attorney fees were properly awarded by the court pursuant to the then existing version of MCR 2.403(O) pertaining to case evaluation sanctions, which is not applicable here because the attorney fee award is mandated by statute, i.e., MCL 565.108.[21] But the Michigan Supreme Court has previously indicated that *Khouri*'s framework also applies to attorney fee determinations under another statute, MCL 500.3178(1), pertaining to no-fault insurance cases, i.e., the case did not involve case evaluation sanctions. *Pirgu v United Services Auto Ass'n*, 499 Mich 269; 884 NW2d 257 (2016). More specifically, *Pirgu* found that the trial court erred by not starting its analysis by multiplying a reasonable hourly rate by the reasonable number of hours expended, and instead of applying the factors in *Wood*,[22] it primarily relied on only one factor, the amount sought and results achieved. *Id*. at 282-283. As a result, the Court remanded that case for reconsideration. *Id*. at 283. Additionally, this Court has indicated that, even in cases in which a statute entitles a party to the award of actual attorney fees, the trial court is nonetheless required to evaluate whether the fee charged violates MRPC 1.5(a), which "generally bars attorneys from charging illegal or clearly excessive fees." *Speicher v Columbia Twp Bd of Election Com'r*, 299 Mich App 86, 91; 832 NW2d 392 (2012).

While the trial court may have erred by finding that *Khouri* was inapplicable to this matter, that error was harmless and does not require reversal because the record as a whole demonstrates that the court considered all of the relevant factors under *Khouri* and MRPC 1.5(a). See *Ypsilanti Fire Marshal v Kircher (On Reconsideration)*, 273 Mich App 496, 529; 730 NW2d 481 (2007) ("[W]e conclude that any error in this respect was not decisive to the outcome, and we will not reverse on the basis of harmless error."); MCR 2.613 (harmless error rule). Consistent with *Pirgu*, the trial court began its analysis by multiplying a reasonable hourly rate multiplied by the reasonable number of hours expended. The record also reflects consideration of the other *Khouri* factors. Regarding factor (1), the court reviewed a very extensive record of the time spent by plaintiff's counsel and conducted a lengthy hearing on that topic. Having presided over many days of trial, the court was more than familiar with the skills requisite to perform the legal service properly. Regarding factors (2) and (5), the opportunity cost to plaintiff's attorney in spending such a significant amount of time on this matter was clear, based on the record and the court's opinion and order following bench trial, and would have been obvious to plaintiff. Regarding factor (3), the court reviewed the State Bar of Michigan Economic Survey of Lawyers (the survey), which revealed that the rate sought by plaintiff was actually less than what was charged in the locality for similar services. Again, the fact that the court considered factor (4) is clear from its opinion and order, which demonstrates that the court spent significant time reviewing the amount

---

[21] MCR 2.403 was subsequently amended to remove the provisions regarding case evaluation sanctions.

[22] *Wood v Detroit Auto Inter-Ins Exch*, 413 Mich 573, 588; 321 NW2d 653 (1982), holding mod by *Khouri*, 481 Mich 519 (2008).

-20-

of time involved, summarized results retained in the prior hearing, and was the finder of fact in the hearing on damages. Regarding factor (6), the court's opinion likewise reflects that it reviewed the nature and length of the professional relationship between plaintiff and plaintiff's counsel, including a summary of the matters in which plaintiff's counsel represented plaintiff over the course of over six years, i.e., the instant matter and the probate matter. Regarding factor (7), the court's opinion demonstrates that it was familiar with the expertise and abilities of plaintiff's attorneys not only because it presided over this matter for many years, but because it compared the $250 hourly rate they charged to the rates charged by similarly experienced attorneys pursuant to the survey. Regarding factor (8), the court's opinion indicates that plaintiff's counsel's fee was based on an hourly rate. Thus, despite the fact that the court indicated that it did not believe the *Khouri* factors were applicable here, the record demonstrates that the court nonetheless complied with its requirement to review the reasonableness of the fee consistent with MRPC 1.5(a).

Finally, defendant argues that the trial court should not have awarded any costs or attorney fees related to work performed by plaintiff's counsel before defendant recorded the claim of interest with the register of deeds. We agree.

The statute relied upon by the court for the award of costs and attorney fees in this matter only allows for costs and damages arising out of the filing of notices with the register of deeds. At the time that defendant filed the notice of claim, MCL 565.108, entitled "Filing slanderous notices of claims; awarding of costs to plaintiff," provided:

> No person shall use the privilege of filing notices hereunder for the purpose of slandering the title to land, and in any action brought for the purpose of quieting title to land, if the court shall find that any person has filed a claim for that reason only, he shall award the plaintiff all the costs of such action, including such attorney fees as the court may allow to the plaintiff, and in addition, shall decree that the defendant asserting such claim shall pay to plaintiff all damages that plaintiff may have sustained as the result of such notice of claim having been so filed for record.[23]

MCL 565.108 was enacted under 1945 PA 200, the preamble for which said it was "AN ACT to define a marketable title to an interest in land . . . to provide for certain penalties for filing slanderous notices of claim of interest, and to provide certain exceptions to the applicability an operation thereof." Based on the plain wording of the statute, and principles announced in its preamble, MCL 565.108 applies to notices filed (i.e., recorded) with the register of deeds, not notices filed elsewhere, such as those filed in the probate court in this case.

Other statutes pertaining to the recording of instruments in the register of deeds support our conclusion. For example, section 2907a of the revised judicature act, MCL 600.2907a, begins with the following sentence: "(1) A person who violates section 25 of chapter 65 of the Revised Statutes of 1846, being section 565.25 of the Michigan Compiled Laws, by encumbering property

---

[23] MCL 565.108 was amended, effective September 28, 2025, but all references to the statute in this opinion are to the version of the statute that existed on November 1, 2017.

through the *recording of a document* without lawful cause with the intent to harass or intimidate any person is liable to the owner of the property encumbered for all of the following . . . ." (Emphasis added). Likewise, MCL 565.25(3) states: "A person who is not exempt under subsection (2) who encumbers property through the *recording of an instrument* listed under subsection (1) without lawful cause with the intent to harass or intimidate any person is liable for the penalties set forth in section 2907a of the revised judicature act of 1961, 1961 PA 236, MCL 600.2907a." (Emphasis added). Because these statutes award damages only for harms caused by filing or recording a document or instrument with the register of deeds, the trial court should not have awarded any costs or attorney fees pertaining to matters that occurred before November 1, 2017, the date that defendant recorded the claim of interest.

### D. STANDING

Because we have determined that the trial court did not err when it determined that defendant acted with malice when he recorded the claim of interest, we need not determine whether the trial court erred when it held that he lacked standing to record the claim of interest.

### IV. CONCLUSION

We affirm the trial court's finding that the statute of limitations expired before defendant recorded a claim of interest regarding the subject real property with the register of deeds and we affirm the court's finding that he acted with malice when he recorded that document. We also affirm the trial court's award of attorney fees and costs to plaintiff, to be paid by defendant, for defendant's slander of title to plaintiff's real property. However, we hold that the trial court miscalculated the amount of damages owed by including attorney fees and costs incurred before November 1, 2017, and by including $102 in costs for the filing fee paid to the State of Delaware. As a result, we vacate the judgment entered on February 15, 2024 in favor of plaintiff and against defendant in the amount of $291,689, and remand to the trial court to recalculate the damages owed to plaintiff consistent with this opinion, including the following: no attorney fees should be awarded for attorney fees or costs incurred before November 1, 2017, and no costs should be awarded for the above referenced $102 fee that plaintiff paid to the State of Delaware. After recalculation of the costs and interest owed, judgment shall be entered in favor of plaintiff, to be paid by defendant, in the corrected amount, *nunc pro tunc*.[24] We retain jurisdiction.

/s/ Michael J. Riordan
/s/ Randy J. Wallace
/s/ Christopher M. Trebilcock

---

[24] To be clear, because the judgment shall be entered *nunc pro tunc*, any post-judgment interest owed on this judgment shall be calculated with a start date of February 15, 2024.

# Court of Appeals, State of Michigan

# ORDER

DBK & DEK LIMITED PARTNERSHIP LP V ALAN KATKIN

Docket No.   369872

LC No.   2018-167269-CZ

Michael J. Riordan
Presiding Judge

Randy J. Wallace

Christopher M. Trebilcock
Judges

Pursuant to the opinion issued concurrently with this order, this case is REMANDED for further proceedings consistent with the opinion of this Court. We retain jurisdiction.

Proceedings on remand shall commence within 56 days of the Clerk's certification of this order, and they shall be given priority on remand until they are concluded. As stated in the accompanying opinion, we remand to the trial court to recalculate the damages owed to plaintiff consistent with this opinion, including the following: no attorney fees should be awarded for attorney fees or costs incurred before November 1, 2017, and no costs should be awarded for the $102 fee that plaintiff paid to the State of Delaware. After recalculation of the costs and interest owed, judgment shall be entered in favor of plaintiff, to be paid by defendant, in the corrected amount, *nunc pro tunc*. Because the judgment shall be entered *nunc pro tunc*, any post-judgment interest owed on this judgment shall be calculated with a start date of February 15, 2024. The proceedings on remand are limited to this issue.

The parties shall promptly file with this Court a copy of all papers filed on remand. Within seven days after entry, appellant shall file with this Court copies of all orders entered on remand.

The transcript of all proceedings on remand shall be prepared and filed within 21 days after completion of the proceedings.

Presiding Judge

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

November 14, 2025
Date

Chief Clerk